# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 6, 2025          Decided August 19, 2025

No. 24-7077

EUGENE HUDSON, JR.,
APPELLANT

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01867)

---

*Harold C. Bone II* argued the cause for appellant. *Elizabeth Clark Bone* and *Kimberly S. Estelle* entered appearances.

*Elisabeth Oppenheimer* argued the cause for appellee. With her on the brief was *Rushab B. Sanghvi*.

Before: KATSAS, RAO, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

Rᴀᴏ, *Circuit Judge*: This appeal is the latest installment in a "seemingly intractable feud" between Eugene Hudson and the American Federation of Government Employees ("AFGE" or "the Union"). *Hudson v. AFGE*, No. 17-cv-2094, 2020 WL 1275685, at *1 (D.D.C. Mar. 17, 2020). Hudson alleges the Union twice removed him from his position as National Secretary-Treasurer in retaliation for his protected speech— namely, criticism of the Union's leadership. He brought a retaliation claim against AFGE under section 101(a)(2) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), which protects union members' rights to speech and assembly. A jury concluded that the Union violated Hudson's rights when it removed him the first time, but not the second. The district court denied Hudson's subsequent motion for a new trial.

Hudson's central argument on appeal is that the district court improperly instructed the jury as to the causation standard and burden of proof. Hudson's challenges fail. A retaliation claim under LMRDA section 101(a)(2) requires but-for causation, which the jury instructions correctly stated. And Hudson invited any error as to the burden of proof instruction. We therefore affirm.

I.

A.

Eugene Hudson has been involved in union politics for decades. As a member of AFGE for over forty years, Hudson rose through the ranks of the union leadership and was elected National Secretary-Treasurer in 2012. Hudson set his sights higher and in 2016 announced his campaign for AFGE president.

In his bid for president, Hudson made several communications to leadership that gave rise to the controversy in this case. In August 2016, Hudson sent a letter to AFGE local officers announcing his candidacy and criticizing the Union's use of resources ("August Letter"). Hudson used a set of Union-provided mailing labels to disseminate the letter. In October, Hudson used a second set of labels that he purchased from AFGE to send the same officers a postcard in which he repeated his concerns about the misuse of union funds and promised to "set out a plan to correct" such abuse. After President Donald Trump was elected in November 2016, Hudson asked his subordinate at AFGE to email a letter to local presidents and treasurers—whose contact information Hudson obtained from a Union database—expressing concerns about what the new administration would mean for the Union ("November Email"). The November Email purported to be "From the Desk of National Secretary Treasurer Eugene Hudson, Jr." On AFGE's view, the November Email "strongly implied that Hudson was better positioned than the current AFGE president to lead the Union through that turmoil." *Hudson v. AFGE*, No. 17-cv-1867, 2024 WL 1716646, at \*1 (D.D.C. Apr. 22, 2024).

These communications spawned internal disciplinary proceedings. In December 2016, charges were filed against Hudson, alleging the communications violated several provisions of the AFGE constitution. A committee investigated and, based on the November Email, referred a charge of "malfeasance of office" to the Union's National Executive Council. The Council found the November Email violated the AFGE constitution's prohibition on the use of Union resources to promote a candidate for AFGE office. In August 2017, the Council voted to remove Hudson from his position as Secretary-Treasurer.

Shortly after his initial removal, Hudson filed the present suit. The district court granted a preliminary injunction ordering Hudson's reinstatement. While the preliminary injunction was in place, the Union attempted a do-over. Another committee investigated, and it also found reason to believe Hudson had violated AFGE rules by using Union resources to send the November Email and the August Letter. In February 2018, the Council found Hudson violated AFGE rules and again suspended him from office. Hudson amended his complaint in response to his second removal.

## B.

Hudson alleged his removals from the Secretary-Treasurer position in August 2017 and February 2018 were unlawful. As relevant to this appeal, Hudson claimed these removals constituted retaliation for his exercise of protected speech in violation of section 101(a)(2) of LMRDA. Pub. L. No. 86-257, § 101(a)(2), 73 Stat. 519, 522 (1959) (codified at 29 U.S.C. § 411(a)(2)). At trial, the parties focused on AFGE's motivation in removing Hudson. While Hudson alleged AFGE removed him in retaliation for exposing financial misconduct, the Union maintained it removed him because he violated the AFGE constitution by using Union resources to send the November Email in support of his personal campaign for AFGE president.

The district court instructed the jury that for Hudson to prevail on his LMRDA retaliation claim, he:

must prove by a preponderance of the evidence that [AFGE] removed him from his position as National Secretary-Treasurer in August 2017 and again in February 2018 because of his protected speech …. In other words, [Hudson] must prove that [AFGE] would not have removed him but for his [speech] …. In considering whether [Hudson] has established his case, you may consider a defense alleged by [AFGE] — namely, that it suspended [Hudson] for use of AFGE staff and resources in sending the Trump email in November 2016. As [Hudson] has the burden of proof, [AFGE] does not have to persuade you of this by a preponderance of the evidence.

The jury found AFGE violated LMRDA when it removed Hudson in August 2017, but not in February 2018. It awarded zero dollars in damages.

Hudson moved for a new trial under Federal Rule of Civil Procedure 59(a). As relevant here, Hudson argued the jury instructions incorrectly described the causation requirement under LMRDA and misstated the burden of proof regarding the Union's potential defense. The district court rejected both arguments. It held that Hudson had failed to preserve the issues at trial because he did not object to the final instructions at the charging conference. And neither part of the instructions constituted plain error. It was "eminently reasonable to read the LMRDA's language as sticking to the basic but-for standard," and LMRDA's "silence on the allocation of the burden of proof … was a reason to place the burden on the plaintiff." *Hudson*, 2024 WL 1716646, at *5, *6 (cleaned up). The district court denied Hudson's motion for a new trial.

Hudson timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Hudson first argues that the but-for causation standard in the jury instructions was erroneous. He contends that LMRDA section 101(a)(2) requires a plaintiff to show only that his protected conduct was a "substantial" or "motivating" factor in a union's decision to take an adverse action, not its but-for cause.[1]

## A.

Because Hudson failed to properly object below, we review this challenge to the jury instructions for plain error. *Long v. Howard Univ.*, 550 F.3d 21, 25 (D.C. Cir. 2008). Federal Rule of Civil Procedure 51 requires parties to object to jury instructions by doing so "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Objections that are not preserved may be reviewed for plain error. Fed. R. Civ. P. 51(d)(2). Despite having requested the jury be instructed to apply a "motivating factor" causation standard, Hudson failed to object to the

---

[1] On appeal, Hudson also argues this court should dispense with a causation standard altogether and instead evaluate whether a violation of section 101(a)(2) has occurred by asking "whether an objective union member would reasonably fear freely assembling and speaking with other members." This argument is entirely new on appeal and therefore forfeited. Moreover, Hudson's proposed "objective unionist" standard is incompatible with the very notion of a retaliation claim and conflicts with circuit precedent. To bring a speech retaliation claim under section 101(a)(2), a plaintiff must demonstrate the adverse action "is causally linked to the protected speech." *Bastani v. AFGE*, 70 F.4th 563, 566 (D.C. Cir. 2023).

court's proposed final instructions when presented with them at the charging conference. Merely requesting instructions that differ from the final instructions is insufficient to preserve an objection. *See Parker v. District of Columbia*, 850 F.2d 708, 715 (D.C. Cir. 1988). Plain error review is therefore appropriate.

Plain error review is narrow and "suited to correcting obvious instances of injustice or misapplied law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256 (1981). We reverse under the plain error standard only in "exceptional circumstances." *Long*, 550 F.3d at 26 (cleaned up). To prevail on his jury instructions claim, Hudson must show (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 169 (D.C. Cir. 2007) (cleaned up).

## B.

There was no error in the district court's instruction to apply but-for causation. We reject Hudson's call for a "motivating factor" test and hold that but-for causation is the correct standard for a retaliation claim under section 101(a)(2) of LMRDA.

LMRDA section 101(a)(2) provides that union members "shall have the right … to express any views, arguments, or opinions" subject to the union's "right … to adopt and enforce reasonable rules as to the responsibility of every member toward the organization." 29 U.S.C. § 411(a)(2). "To establish a *prima facie* free speech claim under Section 101(a)(2), … a plaintiff must show that (1) she engaged in speech protected by LMRDA; (2) she was subject to an adverse action; and (3) that action is causally linked to the protected speech." *Bastani v.*

*AFGE*, 70 F.4th 563, 566 (D.C. Cir. 2023). *Bastani* did not specify what type of causation was required. We now clarify that a plaintiff must show a but-for causal link between his protected speech and a union's adverse action. This conclusion follows from the text and context of section 101(a)(2), as well as Supreme Court and circuit precedent.

"It is textbook tort law that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (cleaned up). The "ancient and simple 'but for' common law causation test" therefore "supplies the default or background rule against which Congress is normally presumed to have legislated when creating its own new causes of action." *Id.* (cleaned up). "[A]bsent an indication to the contrary in the statute itself," a statute will be read to impose a but-for causation requirement. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013). Following this default rule, we have held that statutes lacking any express causation standard nonetheless incorporate a but-for causation requirement. *See United States ex rel. Cimino v. IBM Corp.*, 3 F.4th 412, 420 (D.C. Cir. 2021).

Nothing in the text of section 101(a)(2) displaces this default rule of but-for causation or adopts a motivating factor standard of causation. Section 101(a)(2) does not include an explicit causation standard. It provides only that "[e]very member" of a union "shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). The statute's cause of action provision permits suit by "[a]ny person whose rights" under LMRDA "have been *infringed*." *Id.* § 412 (emphasis added). Reading these provisions together suggests the ordinary rule that the exercise of speech rights must be the but-for cause of the union's adverse action. A union member's

speech rights are "infringed" when an adverse action is taken because of his exercise of those rights, not when the adverse action is taken for some unrelated reason. *Cf. Hartman v. Moore*, 547 U.S. 250, 256 (2006) (explaining First Amendment rights are violated when the government punishes a person because of his protected speech). Even though LMRDA's "text does not expressly discuss causation, it is suggestive" of the default but-for causation standard. *Comcast Corp.*, 140 S. Ct. at 1015.

Congress sometimes provides for a less stringent "motivating factor" standard of causation, but this is the exception not the rule. For instance, Title VII explicitly authorizes discrimination claims where the plaintiff's protected status or activity was "a motivating factor" for an adverse employment action. *See* 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B). The Supreme Court has declined to import a motivating factor standard into statutes that do not contain such specific language. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174–77 (2009) (holding Age Discrimination in Employment Act requires a plaintiff to show age was the but-for cause of the adverse employment action). Even other Title VII provisions that do not include an explicit motivating factor standard have been interpreted as requiring but-for causation. *See Nassar*, 570 U.S. at 362 (holding Title VII retaliation provision requires a plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). As the Supreme Court has admonished, "[w]hen conducting statutory interpretation, we must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."[2]

---

[2] Applying this interpretive principle, we also reject Hudson's suggestion to read section 101(a)(2) "*in pari materia* with § 8(b)(1)(A) of the National Labor Relations Act," Appellant Br. 21, a provision that has been interpreted to require a "motivating factor"

*Gross*, 557 U.S. at 174 (cleaned up). LMRDA does not create liability where a union member's speech was merely "a motivating factor" for an adverse action, and we cannot read this lower liability standard into the statute.

Furthermore, reading section 101(a)(2) to require but-for causation is consistent with the Supreme Court's decision in *Sheet Metal Workers' International Association v. Lynn*, which held that an elected union officer's removal from his position violated section 101(a)(2) of LMRDA because he was removed "*as a direct result* of his decision to express disagreement with" union management. 488 U.S. 347, 354 (1989) (emphasis added). While *Lynn* did not specify whether an adverse action that is the "direct result" of protected speech is necessary, or merely sufficient, to state a retaliation claim under section 101(a)(2), the Court's language in *Lynn* is consistent with reading LMRDA as imposing a but-for causation standard.

Following *Lynn*, other circuits have held that section 101(a)(2) requires a plaintiff to allege facts showing an adverse action was taken against him as "a direct result" of his protected speech.[3] *Casumpang v. Int'l Longshoremen's and*

---

test. *See Consumers Energy Co.*, 347 NLRB 578, 579 (2006) (applying *Wright Line*, 251 NLRB 1083 (1980)).

[3] Several circuits have adopted something like a "substantial factor" causation standard for section 101(a)(2). *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1469 (6th Cir. 1992); *Barger v. United Brotherhood of Carpenters*, 3 F.4th 254, 264 (6th Cir. 2021) (applying *Black*); *Bradford v. Textile Workers Local 1093*, 563 F.2d 1138, 1143 (4th Cir. 1977); *Petramale v. Local 17 of Laborers Int'l Union*, 736 F.2d 13, 18 (2d Cir. 1984). But these cases predate the Supreme Court's decisions in *Nassar* and *Comcast*, which stand for the proposition that a statute's text must clearly displace the default rule of but-for causation. These earlier circuit court decisions are thus of limited persuasive value.

*Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001); *see also McCarthy v. Int'l Ass'n of Machinists*, No. 21-1673, 2021 WL 5766569, at \*4 (3d Cir. 2021); *Serafinn v. Local 722, Int'l Brotherhood of Teamsters*, 597 F.3d 908, 914 (7th Cir. 2010) (explaining "[a] mixed-motive theory of liability is *never* proper in a suit brought under the LMRDA"). This circuit implicitly endorsed a but-for causation requirement for section 101(a)(2), reversing a district court's grant of summary judgment because "a reasonable jury could find" that the union's adverse action was taken "*because of*" the plaintiff's protected speech. *Gilvin v. Fire*, 259 F.3d 749, 759 (D.C. Cir. 2001) (emphasis added).

Finally, a but-for causation requirement is harmonious with analogous First Amendment law. As Hudson emphasizes, the language of section 101(a)(2) was intended "to restate a principal First Amendment value—the right to speak one's mind without fear of reprisal." *United Steelworkers v. Sadlowski*, 457 U.S. 102, 111 (1982). As such, "First Amendment principles may be helpful" in delineating the scope of section 101(a)(2). *Id.* In the First Amendment context, the Supreme Court has described the causation standard for public employees alleging speech retaliation as "but-for causation, without which the adverse action would not have been taken." *Hartman*, 547 U.S. at 260.

\* \* \*

In sum, the best reading of LMRDA is that a plaintiff must demonstrate but-for causation to make out a retaliation claim under section 101(a)(2). Nothing in the text or structure of LMRDA suggests a departure from this default standard. Because the district court correctly instructed the jury, Hudson's claim of error fails.

12

III.

Hudson next argues the jury instructions incorrectly stated the burden of proof. Hudson did not preserve any objection to the jury instructions. Undeterred, he now claims the instructions improperly placed the burden of proof on him.

Hudson's challenge to the jury instructions is barred by the invited error doctrine. Under this doctrine, "a party may not complain on appeal of errors that he himself invited or provoked the district court to commit." *United States v. Wells*, 519 U.S. 482, 488 (1997) (cleaned up). A challenge to a jury instruction after the plaintiff "proposed the instruction's language" is "a textbook case of invited error." *United States v. Benton*, 98 F.4th 1119, 1130 (D.C. Cir. 2024) (cleaned up).

Hudson proposed the following jury instructions on the burden of proof:

> In considering whether Plaintiff has established his case, you may consider the defense alleged by Defendant — namely, that it removed Plaintiff as National Secretary-Treasurer for violating the union resources rule … and not for reasons related to … [his speech] …. *As Plaintiff has the burden of proof, Defendant does not have to persuade you of this by a preponderance of the evidence.*

The district court adopted the italicized language on the burden of proof verbatim. Hudson cannot claim on appeal that the standard he proposed was error.

13

\* \* \*

After six years of litigation, the feud between Hudson and AFGE at last came to a close with the jury's verdict. Hudson has failed to demonstrate entitlement to a new trial, and therefore we affirm the judgment of the district court.

*So ordered.*